Filed 3/6/23  P. v. Gaspar CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B316236 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BA460136 |
| REBECCA GASPAR, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge. Affirmed in part, remanded with instructions.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant and appellant Rebecca Gaspar of one count of conducting an unlawful insurance transaction without a license. On appeal, she argues: (1) the trial court prejudicially erred by failing to adequately instruct the jury on the elements of the offense; (2) the trial court prejudicially erred by not giving
 a unanimity instruction; (3) retrial is barred on remand because her conviction is unsupported by substantial evidence; (4) the trial court improperly ordered restitution for alleged crimes on which the jury acquitted her; and (5) her upper term must be vacated and her case remanded for resentencing in light of Senate Bill No. 567 (2021-2022 Reg. Sess.) (SB 567) and Assembly Bill No. 124 (2021-2022 Reg. Sess.) (AB 124). We agree with Gaspar's fourth and fifth contentions, order her restitution and sentence vacated, and remand the matter for resentencing. On remand, the court may hold a new restitution hearing. In all other respects, the judgment is affirmed.

# PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an 80-count information, charging Gasper with 3 counts of workers' compensation fraud (Ins. Code, § 11760, subd. (a), counts 1-3), 69 counts of forgery (Pen. Code,[1] § 470, subd. (c), counts 4-19, 22-23, 25-28, 30-31, 33-37, 39-62, 64-79), 7 counts of grand theft (§ 487, subd. (a), counts 20-21, 24, 29, 32, 38, 63), and 1 count of engaging in an unlawful insurance business transaction (Ins.

---

[1]     All undesignated statutory references are to the Penal Code.

Code, § 700, subd. (b), count 80).[2] With respect to all counts, the information alleged: (1) the pattern of related felony conduct involved the taking and loss of more than $500,000 (§ 186.11, subd. (a)(2)); and (2) Gaspar took, damaged, and destroyed property of a value exceeding $3.2 million. (§ 12022.6, subd. (a)(4).)[3]

The first jury to hear the case could not reach verdicts, and the trial court declared a mistrial. A second jury convicted Gaspar of count 80 (conducting an unlawful insurance business transaction), but acquitted her of the remaining counts. The jury found all the other allegations not true. The trial court sentenced Gaspar to an upper term of three years in county jail, suspended execution of sentence, gave her credit for time served, and placed her on mandatory supervision for the remaining 103 weeks of her term. One of the terms of mandatory supervision was that Gaspar pay restitution as ordered by the court. The court ordered Gaspar to pay a restitution total of $2,825,114.

Gaspar timely appealed.

## FACTUAL BACKGROUND

Gaspar owned and managed a Professional Employer Organization under the name Prime Staff and later under the name Montclair Services. Her company offered services to other businesses, including managing payroll, paying taxes, and obtaining workers' compensation insurance. Several businesses contracted with Gaspar's company for these services, including

---

2 Counts 35 and 57 were later dropped.

3 The information also alleged that, with respect to all counts, Gaspar stole an amount exceeding $100,000, restricting the judge's ability to grant probation. (§ 1203.045, subd. (a).)

Carlos Gutierrez's staffing business, Saundra Ward's transportation business, Marguerite Scomazzon's decorative business, Sergio Noches's staffing business, Mary Hilvers's family horse ranch, Alvaro G. Ayala's staffing business, and Beatriz Campos's staffing business.

Starting in 2015, Gaspar used insurance broker Kendra Aleman to obtain workers' compensation coverage on behalf of her clients. Upon request, Prime Staff/Montclair Services forwarded certificates of insurance to its clients, purporting to evidence this coverage. As both parties agree, however, the insurance purportedly obtained by the broker, Aleman, and evidenced through the certificates, turned out to be invalid.

Gaspar testified that, during the period of purported coverage, she followed Aleman's instructions and procedures in handling worker injury claims. Gaspar would collect a $5,000 deductible from her clients for each injured worker and forward related paperwork to Aleman. Aleman's communications with both Gaspar and her clients consistently indicated the claims were being handled and that the workers were covered when, in fact, they were not.

Gaspar did not hold any professional license authorizing her to engage in workers' compensation insurance transactions. Because she was unlicensed, she could not lawfully administer claims. Nonetheless, in 2016, Gaspar's employees sent e-mails authorizing surgery and approving temporary disability payments for one injured worker, Linda Wiseheart. On February 2, 2016, an employee from Gaspar's company, Maria Olivas, wrote an e-mail authorizing Wiseheart's surgery. Then, on April 26, 2016, Caezar Evangelista, another employee of Gaspar's company, who was also Gaspar's son, sent an e-mail to Aleman

4

stating Prime Staff had decided to place Wiseheart on temporary disability. Gaspar was cc'd on the e-mail, as was Maria Olivas.[4] Wiseheart had the surgery, but her medical bills were not paid, nor did she receive workers' compensation. Although a representative from Prime Staff repeatedly insisted the situation would be resolved, it never was.

A forensic analyst called as a defense witness testified Gaspar paid Aleman's company, KMK Commercial Lines Insurance, a total of $2,308,548 for workers' compensation premiums on behalf of her clients between June 10, 2015 and July 27, 2017, and that Aleman, in turn, sent Gaspar fake bank records, purporting to show she had used that money to purchase workers' compensation insurance. Gaspar testified that she was unaware her clients did not have insurance coverage because Aleman had indicated the policies existed and provided documentation to that effect.[5]

## DISCUSSION

### I. The trial court properly instructed the jury on the elements of the offense

Gaspar first argues the trial court prejudicially erred by failing to instruct the jury properly on the mental state elements required to secure a conviction under Insurance Code section 700. Specifically, she argues the court failed to instruct that the prosecution was required to prove she knew of the licensing requirement and willfully violated it. The Attorney General

---

4    As discussed in greater detail below, these authorizations served as the basis for Gaspar's conviction on count 80.

5    Aleman was prosecuted separately from Gaspar.

5

counters that the statute contains no such requirements. For the reasons discussed in greater detail below, we agree with the Attorney General.

## A. Background

The court instructed the jury as follows using CALCRIM No. 252:

> The crime[s] charged in this case require proof of the union, or joint operation, of act and wrongful intent.

> The following crime requires general criminal intent: Unlawful Business Transaction. For you to find a person guilty of this crime, that person must not only commit the prohibited act or fail to do the required act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act or fails to do a required act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime.[6]

> On count 80, the court instructed the jury as follows:

> The defendant is charged in Count 80 with unlawful insurance business transaction in violation of Insurance Code section 700(b).

---

6     Though not relevant to the issue presented, the instruction further stated that the crimes of workers' compensation fraud, forgery, and grand theft required specific intent.

To prove the defendant is guilty of this crime, the People must prove:

1. The defendant willfully transacted workers' compensation insurance business;

AND

2. When the defendant did so, she had not first procured a certificate of authority from the Insurance Commissioner of the State of California admitting her to transact workers' compensation insurance.

## B. Analysis

Trial courts have "a sua sponte duty to instruct the jury on the essential elements of the charged offense." (*People v. Merritt* (2017) 2 Cal.5th 819, 824.) The failure to do so violates the defendant's right under the United States and California Constitutions to have a jury determine whether she is guilty of each element beyond a reasonable doubt. (*Ibid.*) We review de novo whether the jury instructions correctly stated the law. (*People v. Serrano* (2022) 77 Cal.App.5th 902, 909.)

Subdivision (b) of Insurance Code section 700 states: "The unlawful transaction of insurance business in this state in willful violation of the requirement for a certificate of authority is a public offense punishable by imprisonment . . . ."

"The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (§ 7, subd. (1).) "'[T]he terms "willful" or

"willfully," when applied in a penal statute, require only that the illegal act or omission occur "intentionally," without regard to motive or ignorance of the act's prohibited character."' (*People v. Atkins* (2001) 25 Cal.4th 76, 85.) Similarly, citizens are required to apprise themselves of the law and are presumed to know the law. (*People v. Hagedorn* (2005) 127 Cal.App.4th 734, 748.) "[I]gnorance of the law is no excuse" for violating it. (*Ibid.*)

Applying these principles to the language of Insurance Code section 700, we reject Gaspar's assertion that the prosecution was required to prove she knew of the licensing requirement and intentionally violated it. Because the statute does not require proof that a defendant knew of the licensing requirement in order to obtain a conviction, the trial court's instructions defining the elements of the offense were correct.[7] It bears noting that this interpretation of the statute is in harmony with its intended purpose of protecting consumers from individuals who unlawfully engage in insurance transactions with no license to do so.[8]

---

[7] As noted above, those instructions explained to the jury that the prosecution must prove Gaspar willfully transacted workers' compensation insurance without first procuring a certificate to do so.

[8] We are unpersuaded by Gaspar's contention that a rejection of her reading of the statute would improperly render her offense a strict liability crime. We instead conclude that the statute, which asks whether the defendant intended to do the proscribed act, establishes a general intent crime. (Cf. *People v. Noori* (2006) 136 Cal.App.4th 964, 975.)

## II. A unanimity instruction was not required

Gaspar next argues the trial court prejudicially erred in failing to give a unanimity instruction. For the reasons discussed below, we disagree.

### A. Background

When discussing jury instructions with the parties, the trial court noted it believed a unanimity instruction was needed for count 80. For reasons not discussed on the record, the court ultimately did not provide that instruction to the jury.

### B. Relevant Law

"In a criminal case, a jury verdict must be unanimous." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "[T]he jury must [also] agree unanimously the defendant is guilty of a *specific* crime." (*Ibid.*, italics in original.) "Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid.*) "'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.'" (*Ibid.*, italics in original.) We review Gaspar's argument that the trial court was required to give a unanimity instruction de novo, as her contention raises a mixed question of law and fact that is predominately legal in nature. (*People v. Sorden* (2021) 65 Cal.App.5th 582, 616.)

## C. Analysis

During closing argument, when discussing count 80, the prosecution explained the charge applied to "evidence where the defendant was doing things that only an insurance company has the legal right to do; like authorizing someone to be on temporary disability or authorizing someone for surgery." The prosecution went on to explain that Gaspar "never had any licenses to transact insurance; basically, to administer insurance claims in terms of authorizing surgeries or anything like that." The prosecutor further explained that Gaspar's son and employee, Caezar Evangelista, wrote an e-mail authorizing temporary disability for a worker.

The prosecution thus spoke in general terms about what type of conduct formed the basis for convicting Gaspar on count 80, and also highlighted for the jury two instances of Gaspar's culpable conduct – the authorization of surgery and placement of someone on temporary disability by Prime Staff. Later, the prosecution reiterated that count 80 involved the authorization of surgery and placement of someone on temporary disability. Although the prosecution did not name the individual Prime Staff authorized surgery for and placed on temporary disability, it is clear from the evidence presented at trial that the prosecution was referring to Linda Wiseheart without explicitly naming her. As Gaspar concedes in her opening brief, these two instances were "the only two examples specified by the prosecution in closing argument."

Although the prosecution presented two acts to the jury that could form the basis for count 80, no unanimity instruction was required because Gaspar offered the same defenses to both acts, ensuring no juror could have believed she committed one act

10

but not the other. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 879.) Indeed, for all the acts that could fall under count 80, Gaspar's defenses were Aleman was at fault, she did not realize she was unauthorized to engage in insurance decisions, or the insurance authorizations were not done at her direction. Because she did not offer different defenses to each act of unlawfully transacting insurance, a unanimity instruction was not required. (*Id.* at pp. 879-880.)

## III. The jury's guilty verdict is supported by substantial evidence

Gaspar next argues that, in the event this court concludes the trial court committed prejudicial instructional error, we should also conclude retrial is barred based on insufficient evidence in the record to support a guilty verdict on count 80. It does not appear Gaspar has raised her substantial evidence challenge on its own footing, but rather only in relation to the issue of retrial being barred should this court find prejudicial instructional error. Because, as discussed above, we conclude the trial court did not commit instructional error, we may not need to address this contention. We do so anyway, however, because any conviction must be supported by substantial evidence.

In reviewing a judgment for sufficiency of the evidence, a court must review the record in the light most favorable to the judgment to determine if there is substantial evidence from which any rational trier of fact could find each element of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319 [99 S.Ct. 2781, 61 L.Ed.2d 560]; *People v. Staten* (2000) 24 Cal.4th 434, 460.) Substantial evidence is evidence that is "'reasonable in nature, credible, and of solid value.'" (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

11

Substantial evidence includes circumstantial evidence and reasonable inferences based on that evidence. (*In re James D.* (1981) 116 Cal.App.3d 810, 813.) In reviewing a sufficiency claim, we "presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "Because we must draw all inferences in support of the judgment, [a] defendant 'bears an enormous burden' when challenging the sufficiency of the evidence." (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161.)

Applying these principles, we reject Gaspar's sufficiency challenge. As mentioned above, the prosecution introduced into evidence an e-mail sent to Aleman from Caezar Evangelista, Gaspar's employee and son, stating Prime Staff had decided to place Wiseheart on temporary disability. Gaspar was cc'd on this e-mail. This e-mail alone was sufficient to support the jury's verdict. Additionally, the jury could reasonably infer Gaspar was guilty based on her employee Maria Olivas's e-mail authorizing Wiseheart's surgery. Although Gaspar testified she never directly told employees to authorize or deny medical treatment, the jury's guilty verdict indicates it did not find that testimony credible. In our capacity as a reviewing court, we accord due deference to the jury and do not substitute our own evaluation of a witness's credibility for that of the fact finder. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) For these reasons, Gaspar's conviction is supported by substantial evidence.

## IV. Victim restitution

Gaspar next argues the restitution ordered by the trial court was improper because it was based on charged crimes of which she was acquitted. We agree.

## A. Background

Carlos Gutierrez's staffing business, Saundra Ward's transportation business, Marguerite Scomazzon's decorative business, Sergio Noches' staffing business, Mary Hilvers' family horse ranch, Alvaro G. Ayala's staffing business, and Beatriz Campos' staffing business all contracted with Gaspar's company for payroll services, tax services, and obtaining workers' compensation insurance. The workers' compensation certificates were invalid.

A forensic analysis revealed Gaspar paid Aleman's company, KMK Commercial Lines, a total of $2,308,548 for workers' compensation premiums on behalf of her clients, and that Aleman sent Gaspar fake bank records falsely indicating she had used the money to purchase workers' compensation insurance.

Aleman was prosecuted separately from Gaspar. Gaspar testified at trial that she believed she was obtaining legitimate certificates of insurance from Aleman, and the jury evidently believed Gaspar, acquitting her of allegations that she had forged the certificates, knowingly perpetrated fraud, and stolen from the named businesses. (As explained above, the jury convicted Gaspar only of operating without an insurance license.)

At the sentencing hearing, defense counsel argued it was unclear what the jury found Gaspar did in violation of the licensing requirement, and at most, she should be ordered to pay $20,000, equal to deductibles paid out by named victims.

The prosecution argued Gaspar should be ordered to pay direct victim restitution equal to the sum of all workers' compensation premiums paid to Gaspar and all other losses sustained due to the businesses not having valid insurance, such

13

as medical bills, salaries, and legal fees. Citing *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), the prosecution highlighted the principle that an individual may be ordered to pay restitution for a crime of which they were acquitted as a condition of probation. The prosecution then recommended the trial court sentence Gaspar to a term of probation. The prosecution argued the appropriate restitution amount was $2,825,114.

Finding the victims "were particularly vulnerable," the trial court denied probation. The court sentenced Gaspar to an upper term of three years in county jail, suspended execution of sentence, awarded credit for time served, and placed her on mandatory supervision for the remainder of her term. One of the terms of mandatory supervision was that she pay restitution as ordered by the court. The court ordered Gaspar to pay the full amount requested by the prosecution – $2,825,114.[9]

## B. Relevant Law

We review the trial court's restitution order for abuse of discretion. (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence[.]" (*People v. Moine* (2021) 62 Cal.App.5th 440, 449 (*Moine*).)

_____

9　The court filed victim restitution orders for the following amounts: (1) $522,646 to be paid to Sergio Noches; (2) $888,000 to Alvaro Gabriel Ayala; (3) $393,061 to Mary Hilvers; (4) $45,934.00 to Marguerite Scomazzon; (5) $124,314.00 to Carlos Gutierrez; (6) $74,721 to Saundra Ward; and (7) $776,438 to Beatriz Campos. The orders indicated these values equaled the amount Gaspar had "stolen or damaged."

California's Constitution provides that "every crime victim has a right to be compensated by the defendant for losses incurred as a result of the defendant's crime." (*People v. Martinez* (2017) 2 Cal.5th 1093, 1100 (*Martinez*); Cal. Const., art. I, § 28, subd. (b)(13)(A).) This principle is codified under section 1202.4, subdivision (a)(1), as well as subdivision (f)(3), which "authorizes trial courts to order direct victim restitution for those losses incurred as a result of the crime *of which the defendant was convicted.*" (*Martinez, supra*, 2 Cal.5th at p. 1101, italics added.) "When the court sentences an adult to custody (either in prison or jail), the court may only impose restitution for economic losses incurred 'as a result of' the defendant's criminal conduct. (Pen. Code, § 1202.4, subd. (f).)" (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1101.) "Put differently, restitution may be imposed in such cases only to the extent the defendant's criminal conduct played a 'substantial factor' in causing the victim's economic loss." (*Ibid.*) This authority is distinct from the court's broader authority to order a defendant to pay restitution as a condition of probation. (*Id.* at pp. 1101-1102.) That broader authority, arising in the probation condition context, includes the power to order restitution not necessarily caused by criminal conduct underlying the conviction, including conduct resulting in an acquittal. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1122 (*Carbajal*).) In the probation context, courts can impose restitution as long as it is reasonably related to either the crime or the goal of deterring future criminality. (*In re S.O., supra*, at p. 1101.)

## C. Analysis

Gaspar argues the trial court abused its discretion by ordering restitution based on conduct relating to victims other than those involved in count 80 (i.e., imposing restitution for

conduct relating to counts on which the jury acquitted her). Gaspar notes the prosecution alleged she violated count 80 by managing claims without a license, not by providing insurance that turned out to be invalid. She contends although trial courts are permitted in the probation condition context to award restitution for conduct of which the defendant was acquitted (*Carbajal*, *supra*, 10 Cal.4th at p. 1122), such an award is prohibited here, where the trial court imposed a split sentence and the restitution was a condition of mandatory supervision.[10] We agree with Gaspar. "[V]ictim restitution ordered as part of a sentence to county jail followed by mandatory supervision pursuant to section 1170(h) is an order pursuant to section 1202.4 and its scope is limited 'to those losses arising out of the criminal activity that formed the basis of the conviction.'" (*People v. Rahbari* (2014) 232 Cal.App.4th 185, 196 (*Rahbari*), disapproved on another ground in *People v. Bryant* (2021) 11 Cal.5th 976, 986, fn. 5 (*Bryant*).) This holding controls.

The Attorney General disagrees, arguing the above-quoted holding of *Rahbari* has been cast into doubt in light of *Bryant*. *Bryant* recently explained: "[I]n general, the conditions of probation and mandatory supervision are now intended to be handled in the same way." (*Bryant*, *supra*, 11 Cal.5th at p. 986, fn. omitted; see *id.* at p. 985, fn. omitted ["conditions of mandatory supervision resemble those of probation in that they are ordered by a judge at the time of sentencing and involve an

---

10      "A split sentence is a hybrid sentence in which a trial court suspends execution of a portion of the term and releases the defendant into the community under the mandatory supervision of the county probation department." (*People v. Camp* (2015) 233 Cal.App.4th 461, 464, fn. 1.)

16

individualized exercise of discretion based on the particular case."].) Accordingly, *Bryant* concluded the *Lent* test used to determine whether probation conditions are lawful now *generally* applies to mandatory supervision conditions as well. (See *Bryant, supra*, at p. 981 [mandatory supervision conditions "are to be evaluated for reasonableness on a case-by-case basis under the test set out in [*Lent, supra*, 15 Cal.3d 481 [ ]."]; *Bryant, supra*, at p. 986, fn. 6 [explaining that its holding is a general rule that may be subject to certain exceptions].) *Lent* articulated the seminal test for determining whether a probation condition is reasonable and thus lawful: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .'" (*Lent, supra*, at p. 486, fn. omitted.) *Bryant*'s adoption of the *Lent* test (in particular, the third prong of the test) expressly contemplates courts may generally (with some possible exceptions) impose mandatory supervision conditions reasonably related to future criminality. (*Bryant, supra*, at pp. 983, 987.) Based on *Bryant*, the Attorney General contends Gaspar's mandatory supervision condition (i.e., paying restitution) was lawful because the trial court could reasonably conclude imposing restitution equal to the amount paid to Gaspar for invalid insurance would deter her from engaging in future unlawful insurance transactions.

We are not persuaded. Although *Bryant* articulated the "general" principle that "conditions of probation and mandatory supervision are now intended to be handled the same way[,]" (*Bryant, supra*, 11 Cal.5th at p. 987) it also noted: "Of course, every general rule is subject to exceptions. For example, *Rahbari*,

17

*supra*, 232 Cal.App.4th at pages 193-194, held that victim restitution orders for persons on mandatory supervision are limited to losses caused by the criminal conduct for which the defendant was convicted (§ 1202.4), not the broader provisions for restitution governing persons on probation (§ 1203.1). We need not consider these nuances in resolving the narrow issue here." (*Bryant*, *supra*, at p. 987, fn. 6.) *Bryant* thus expressly declined to consider whether *Rahbari*'s holding was correct, and indeed singled out the holding of *Rahbari* as one potential example of a statutory exception to the general principle that probation and mandatory supervision conditions should be treated as analogous to one another.[11] We see no reason to diverge from *Rahbari*, which engages in a thorough and persuasive statutory analysis of the issue now presented. (*Rahbari*, *supra*, 232 Cal.App.4th at pp. 190-196.) Indeed, reaching a holding contrary to *Rahbari* would go against "the rationale behind the rule authorizing broader victim restitution for probation sentences[ ]" – namely that a defendant has the right to refuse probation if he feels the terms are too harsh, whereas a defendant sentenced to imprisonment has no such right. (*Id.* at p. 194.)

In sum, because the trial court denied probation, it was not permitted to order Gaspar to pay restitution based on alleged

---

11      *Bryant*, incidentally, dealt with a mandatory supervision electronics search condition. (*Bryant*, *supra*, 11 Cal.5th at p. 992.) The Attorney General in *Bryant* argued "the status of mandatory supervision justifies an electronics search clause for all those so released[,]" rendering *Lent* review inappropriate. (*Id.* at p. 987.) The Supreme Court disagreed, concluding the *Lent* case-by-case approach applies to mandatory supervision conditions in general, while noting exceptions to that general rule such as the one articulated in *Rahbari* might exist.

crimes of which she was acquitted. The jury convicted Gaspar only of one count of conducting an unlawful insurance transaction without a license. It did not convict her of the other 79 charged offenses, nor did it convict her of providing insurance that turned out to be invalid.[12] In other words, it does not appear the jury concluded Gaspar was criminally liable for the entire amount of the premiums paid to her or the entire losses of all alleged victims. The trial court therefore abused its discretion by applying the wrong legal standard in ordering restitution for conduct other than the crime of which Gaspar was convicted. (*Rahbari, supra*, 232 Cal.App.4th at p. 196 [mandatory supervision restitution is limited to losses arising from criminal activity that formed basis of conviction]; *Moine, supra*, 62 Cal.App.5th at p. 449 [application of incorrect legal standard is abuse of discretion].) The trial court is directed to vacate the victim restitution orders.

## V. The case is remanded in light of SB 567 and AB 124

As mentioned above, the trial court imposed the upper term, suspended. In selecting the upper term, the court noted the manner in which the crime was carried out indicated planning, sophistication, and professionalism; the crime involved a large monetary loss to the victims; and the defendant took advantage of the trust and confidence of the victims to commit the crime. The court concluded the upper term was justified because the above-noted aggravating factors substantially outweighed the mitigating factor (that Gaspar had no prior criminal record).

---

12      As noted above, the jury acquitted Gaspar on all counts of fraud, forgery, and grand theft.

19

Effective January 1, 2022, "Senate Bill 567 amended section 1170, subdivision (b) to specify that, when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if jury is waived) beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction. (Stats. 2021, ch. 731, §§ 1.3, 3(c), adding Pen. Code, § 1170, subd. (b)(1)-(3), by amendment.)" (*People v. Jones* (2022) 79 Cal.App.5th 37, 44.) In light of this new law, Gaspar asks that her case be remanded so the trial court can reconsider its decision to impose the upper term on her conviction.

Gaspar also asks that her case be remanded in light of AB 124, which also became effective January 1, 2022. AB 124 sets the low term as the presumptive term when any of the following are a "contributing factor" to the offense: the person has experienced psychological, physical, or childhood trauma; the person is or was a youth at the time of the commission of the offense; or prior to the offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking. (See Stats. 2021, ch. 695, § 5.3, adding § 1170, subd. (b)(6).) Where the presumption applies, the court may not impose a higher sentence unless it finds that "aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).)

The Attorney General agrees remand is appropriate because SB 567 and AB 124 apply retroactively to Gaspar's nonfinal case. We agree with the parties. (*People v. Flores* (2022)

73 Cal.App.5th 1032, 1038-1039 [SB 567 is retroactive]; see *In re Estrada* (1965) 63 Cal.2d 740, 744-745 [ameliorative laws presumptively apply retroactively to nonfinal cases].) The sentence is vacated. The case is remanded for the trial court to apply SB 567 and AB 124 in the first instance to determine Gaspar's new sentence.[13]

---

13    Gaspar briefly argues that on remand, the trial court is prohibited from changing her sentence to probation in order to justify a high restitution award. In support of her contention, Gaspar cites authority holding a new sentence on remand cannot exceed the original sentence because a defendant may not be penalized for pursuing a successful appeal. (*People v. Burns* (1984) 158 Cal.App.3d 1178, 1184.) Because the trial court has not yet resentenced Gaspar, we need not address this contention. On remand, Gaspar and her trial counsel may raise the argument as they see fit, and the trial court may consider its full range of lawful sentencing options. If the trial court resentences Gaspar in a manner she believes unlawfully penalizes her for pursuing a successful appeal, she may challenge her new sentence on appeal.

## DISPOSITION

Gaspar's sentence and restitution orders are vacated. On remand, the trial court is directed to apply SB 567 and AB 124 in determining Gaspar's new sentence. The court may also hold a new restitution hearing. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

COLLINS, Acting P.J.

SCADUTO, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.