Filed 6/28/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re S.O., a Person Coming Under the Juvenile Court Law. | B281863 |
| | (Los Angeles County Super. Ct. No. PJ51850) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| S.O., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Fred J. Fujioka, Judge.  Affirmed.

Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, Heather B. Arambarri, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Under Welfare and Institutions Code section 730.6, a juvenile court has the power to require a minor to pay restitution in the amount "sufficient to fully reimburse the victim . . . for all determined economic losses *incurred as the result of*" the criminal conduct that makes him subject to the juvenile court's jurisdiction. (Welf. & Inst. Code, § 730.6, subd. (h)(1), italics added.)[1] Does a juvenile court have the authority to require restitution for losses *beyond those* that resulted from the criminal conduct with which the minor is charged? We conclude that the answer is "yes" if that restitution is a properly imposed condition of probation. Because the minor in this case was placed on probation and because substantial evidence supports the juvenile court's findings that the minor was involved in the uncharged conduct and that holding him responsible for the full amount of loss to the victim furthers the purposes of probation, we affirm the juvenile court's restitution order.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

#### A.     *First theft*

On October 15, 2015, Luz Mora (Mora) parked her 2015 Hyundai Elantra in an underground parking lot. She parked in a "stacked" parking space, with her car parked behind her mother's car. Mora had left a set of her car keys in a purse in her mother's unlocked car. When Mora went to the lot to retrieve her car, the keys from her mother's car—and her car—were gone.

The next day, Mora's mother saw Mora's car parked on a nearby street. Using a second set of keys, Mora retrieved her car and parked it back in the underground lot. The car now had

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

"scratches and bumps" on its exterior; the car's upholstery reeked of liquor; and $758 in Mora's personal items had been removed.

### B.     *Second theft*

On October 17, 2015 (the day after Mora retrieved her car), the car was once again stolen from the underground parking lot.

One month later, on November 17, 2015, law enforcement pulled over Mora's car, and S.O. (minor) was the driver and sole occupant of the car.  Minor was using the set of car keys taken and used in the first theft.

## II.    Procedural Background

In January 2016, the People filed a petition in juvenile court alleging that minor had committed the felony of taking or driving a vehicle without consent on November 17, 2015 (Veh. Code, § 10851, subd. (a)).

The People subsequently amended the petition to allege that minor had committed the misdemeanor of receiving stolen property (Pen. Code, § 496).  That same day, minor admitted to the stolen property allegation.  Rather than declare minor to be a "ward" of the court, the juvenile court placed minor on probation for six months pursuant to section 725, subdivision (a).  One of the conditions of probation was the standard condition that minor "pay . . . the victim for any damages to []her or []her property that you or your companions caused by committing this crime."

The juvenile court subsequently held a restitution hearing. Mora testified to the circumstances of the two thefts as well as the cost estimate to repair her car and the value of the items removed from her car.  The court found Mora to be "credible" and imposed restitution in the amount of $4,946.  The court recognized that this amount included, in part, the cost to repair damage to the car and the removal of Mora's personal items

following the first, uncharged theft. However, the court determined that it was appropriate to hold minor responsible for paying restitution with respect to *both* thefts because the court "reasonabl[y] infer[red] [that minor] took the car itself since he had the keys [taken during the first theft]," because the court has a duty "to make the victim as whole as possible" and because "it's rehabilitative to the minor for him to pay for his wrongdoing."

Minor filed a timely appeal.

## DISCUSSION

Minor argues that the juvenile court erred in imposing a restitution obligation that includes losses arising from the first, uncharged theft of Mora's car. To evaluate this argument, we must ask two questions: (1) *can* a juvenile court impose restitution based on losses arising from uncharged conduct, and, if so, (2) was the imposition of such restitution appropriate in this case?

As a general matter, we review restitution orders for an abuse of discretion. (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305 (*Luis M.*).) However, where the specific issue is whether a court has the authority to issue restitution, we review that question of law independently. (*In re Alexander A.* (2011) 192 Cal.App.4th 847, 852 (*Alexander A.*).) And where the specific issue is whether the court's factual findings support restitution, we review those findings for substantial evidence. (*In re A.M.* (2009) 173 Cal.App.4th 668, 674 (*A.M.*); see generally *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 31 [an "abuse of discretion is established if the court determines that the findings are not supported by substantial evidence" (italics omitted)].)

# I. Can a Juvenile Court Impose Restitution Based on Losses Arising From Uncharged Conduct?

The juvenile court has authority over a minor (that is, a person under the age of 18) if he or she violates any federal, state, or local law "other than an ordinance establishing a curfew based solely on age." (§ 602.) If the court finds, beyond a reasonable doubt, that the minor violated the law and is therefore a "person described by Section . . . 602" (*People v. Nguyen* (2009) 46 Cal.4th 1007, 1022; *In re Winship* (1970) 397 U.S. 358, 368), the court may: (1) declare the minor to be a "ward" and either (a) place him or her in a juvenile home, ranch, camp, forestry camp, or county juvenile hall (§§ 726, 730, subd. (a)), or (b) place him on probation (§ 730, subd. (b)); or (2) not declare the minor to be a ward but place him or her on probation for up to six months (§ 725, subd. (a)). (See generally § 725; Cal. Rules of Court, rule 5.790(a)(2).)

If the juvenile court declares a minor to be a ward and places him or her on probation, the court "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the [minor] enhanced." (§ 730, subd. (b).) The same is true for minors who, under section 725, are placed on probation without being declared wards. (*In re Walter P.* (2009) 170 Cal.App.4th 95, 99 ["Sections 725 and 729.2 . . . serve as a floor, not a ceiling, for juvenile probation conditions"]; see also § 725, subd. (a) [noting a non-ward minor's probation must "include" the three conditions set forth in section 729.2]; *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1135-1136 [the word "including" is not a term of limitation].) In both instances, the court has "wide discretion" in selecting which

conditions of probation to impose. (*In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).)

"Restitution has long been considered a valid condition of probation." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 (*Carbajal*); *People v. Birkett* (1999) 21 Cal.4th 226, 235 (*Birkett*).) This is undoubtedly because restitution furthers the twin goals of reforming and rehabilitating a minor by (1) "impress[ing] upon the [minor] the gravity of the harm he [or she] has inflicted upon another," (2) "provid[ing] an opportunity to make amends," thereby giving the minor a chance to demonstrate "to *himself* [or *herself*] that he [or she] is changing," and (3) "deterring future criminality" by deterring "future attempts to evade his [or her] legal and financial duties." (*Charles S. v. Superior Court* (1982) 32 Cal.3d 741, 747-748; *Carbajal*, at p. 1124; *People v. Anderson* (2010) 50 Cal.4th 19, 27 (*Anderson*).)

But what is the *scope* of the restitution that may be ordered against a minor?

The statute explicitly governing restitution in juvenile cases is section 730.6. In pertinent part, section 730.6 obligates a court—"unless it finds compelling and extraordinary reasons for not doing so"—to impose restitution in an "amount sufficient to fully reimburse the victim . . . for all determined economic losses *incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602*." (§ 730.6, subd. (h)(1), italics added.) This duty to impose restitution implements the right of crime victims to seek and obtain restitution, a right that is secured by our Constitution. (Cal. Const., art. I, § 28, subds. (a)(3) & (b)(13)(A), (B) ["Restitution shall be ordered from the convicted wrongdoer in every case . . . in which a crime victim suffers a loss"].) But the

italicized language limits a juvenile court's statutory power to impose restitution to losses caused by the minor's *charged, criminal* conduct because that is the "conduct for which the minor was found to be a person described in Section 602."

But does the statutory authority set forth in section 730.6 mark the outer boundary of the juvenile court's power to impose restitution?

We conclude that the answer is "no." We do so by looking to the power of the courts to impose restitution against convicted *adults*, which provides a compelling analogy in light of the "'parallel restitutionary requirements'" of the two court systems. (*Luis M.*, *supra*, 59 Cal.4th at p. 304; *Birkett*, *supra*, 21 Cal.4th at p. 240, fn. 15; *In re Imran Q.* (2008) 158 Cal.App.4th 1316, 1320.)

As in juvenile court, the statute governing restitution in adult criminal cases limits a trial court's power to impose restitution to those "economic loss[es]" incurred "as a result of the defendant's conduct." (Pen. Code, § 1202.4, subd. (f).) As our Supreme Court recently held, "[t]his provision . . . authorizes trial courts to order direct victim restitution for those losses incurred as a result of the crime of which the defendant was convicted," but no further. (*People v. Martinez* (2017) 2 Cal.5th 1093, 1101; *People v. Sy* (2014) 223 Cal.App.4th 44, 65 ["restitution under [Penal Code] section 1202.4 is limited to losses arising from the criminal conduct that formed the basis for the defendant's conviction"]; see also *People v. Lai* (2006) 138 Cal.App.4th 1227, 1247-1248; *People v. Jessee* (2013) 222 Cal.App.4th 501, 510; *People v. Woods* (2008) 161 Cal.App.4th 1045, 1050, fn. 3.)

As in juvenile court, trial courts hearing adult criminal matters also have the authority to make the payment of

7

restitution a condition of probation. (Pen. Code, § 1203.1, subd. (a)(3) [in granting probation, court "shall provide for restitution in proper cases"]; *People v. Giordano* (2007) 42 Cal.4th 644, 652.) When a trial court places an adult on probation, the court's power to impose restitution is not limited to the scope of what may be imposed under Penal Code section 1202.4. "This greater latitude to impose restitution arises from the purpose of probation to foster rehabilitation [citation] as well as from the defendant's consensual decision to forgo imprisonment in favor of probation and its potentially more onerous conditions [citation]." (*People v. Walker* (2014) 231 Cal.App.4th 1270, 1274; see also Pen. Code, § 1203.1, subd. (j) [purpose of probation is "the reformation and rehabilitation of the probationer"]; *People v. Moran* (2016) 1 Cal.5th 398, 402 [noting that "probation is an act of grace or clemency" that a defendant may refuse]; *Anderson*, *supra*, 50 Cal.4th at p. 32 [same].)

Taken together, these two lines of authority mean that the scope of restitution that a trial court may impose on an adult depends on the sentence the court imposes.

When the court sentences an adult to custody (either in prison or jail), the court may only impose restitution for economic losses incurred "as a result of" the defendant's criminal conduct. (Pen. Code, § 1202.4, subd. (f).) Put differently, restitution may be imposed in such cases only to the extent the defendant's criminal conduct played a "substantial factor" in causing the victim's economic loss. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321-1322 (*Holmberg*).) To be a substantial factor, the defendant's criminal conduct must be more than a "trivial or remote" factor contributing to the victim's loss, but it need not be the "sole" cause of the loss. (*People v. Sanchez* (2001)

8

26 Cal.4th 834, 845; *People v. Fromuth* (2016) 2 Cal.App.5th 91, 101.)

However, when the court places a defendant on probation, the court may impose restitution as long as "the restitution condition [is] reasonably related either to the crime of which the defendant is convicted or to the goal of deterring future criminality." (*Carbajal*, *supra*, 10 Cal.4th at p. 1123.) This limit is a specialized application of the limit applicable to *all* probation conditions. (See *People v. Lent* (1975) 15 Cal.3d 481, 486 ["A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality'"].) Because, as explained above, requiring a defendant to repay his victims for their economic losses serves to deter future criminality (*Carbajal*, at p. 1124), courts may require an adult probationer to pay restitution on amounts caused by "related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation]." (*Id.* at p. 1121; *Anderson*, *supra*, 50 Cal.4th at p. 27.)

We conclude that this same dual-pronged approach to a court's authority to impose restitution applies to minors in juvenile court insofar as the pertinent restitution statutes set the proverbial ceiling when the minor is incarcerated, but set only the floor when the minor is placed on probation. (Accord, *In re T.C.* (2009) 173 Cal.App.4th 837, 844-845 [so holding, as to minor placed on probation as a ward of the court]; *A.M.*, *supra*, 173 Cal.App.4th at pp. 673-674 [applying "substantial factor" causation test to a minor placed on probation when assessing

9

whether restitution is reasonably related to the crime rather than to the goal of deterring future criminality].)  To be sure, probation in juvenile court is not identical to probation in adult court because adults can refuse probation (and instead serve time in custody) while minors cannot.  (*Sheena K.*, *supra*, 40 Cal.4th at p. 889; *In re Tyrell J.* (1994) 8 Cal.4th 68, 81-83, disapproved on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128, 130.)  But probation is not optional for minors for a reason—namely, because a minor's rehabilitation and reformation is paramount and because "[i]t would be inconsistent with the juvenile court's determination of the best manner in which to facilitate rehabilitation of a minor if [the minor] could . . . elect to forgo . . . probation and instead choose detention." (*In re Tyrell J.*, at p. 82.)  If the minor's rehabilitation and reformation is so important that it justifies denying the minor the right to refuse probation, it is important enough to empower the juvenile court to impose a restitutionary obligation aimed at achieving those same goals.

For these reasons, the juvenile court had the authority to impose restitution upon minor for uncharged conduct because he was placed on probation.

## II.    Is the Juvenile Court's Restitution Order in This Case Appropriate?

Once the scope of restitution is established, the juvenile court must fix restitution in an amount "reasonably calculated to make the victim whole." (*Alexander A.*, *supra*, 192 Cal.App.4th at p. 856.)  In doing so, the court must use a "rational method" of calculation and must rely on facts found by a preponderance of the evidence.  (*In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1391-1392; *Holmberg*, *supra*, 195 Cal.App.4th at p. 1319; *People v. Millard* (2009) 175 Cal.App.4th 7, 36.)  Because a restitution

10

hearing is informal, the amount need not be fixed with the precision required of a civil judgment.  (*Alexander A.*, at p. 855; *In re Brittany L.*, at p. 1391.)  For these reasons, several courts have held that a court may accept the victim's testimony as prima facie evidence of the amount owed and place the onus on the minor to rebut that evidence.  (*People v. Goulart* (1990) 224 Cal.App.3d 71, 83-84; *People v. Weatherton* (2015) 238 Cal.App.4th 676, 684.)

The juvenile court did not abuse its discretion in ordering minor to pay restitution for damages caused by the first, uncharged theft of Mora's car.  Minor was arrested as the driver and sole occupant of Mora's car after the second theft while possessing the same set of keys used to effectuate the first theft.  These facts are sufficient to support a finding, by a preponderance of the evidence, that minor was involved in the first theft, particularly where, as here, minor by his plea necessarily admitted to knowing the car was stolen.  What is more, holding minor responsible for paying Mora the full amount of damage to her car furthers the rehabilitative and reformative goals of probation.

**DISPOSITION**

The restitution order is affirmed.

**<u>CERTIFIED FOR PUBLICATION.</u>**

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST

11