Filed 7/18/23  P. v. Merli CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ERIC GRAYSON MERLI,<br><br>     Defendant and Appellant. | B319579<br><br>(Los Angeles County<br>Super. Ct. No. YA102143-01) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Laura C. Ellison, Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Katja Grosch, under the appointment by the Court of Appeal, for Plaintiff and Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

Eric Merli appeals from a judgment that imposes restitution in the amount of $3,500 for attorney fees incurred by one of his victims. He contends the attorney fees were unauthorized under Penal Code section 1202.4 because they were unrelated to the victim's economic loss.[1] He also contends the trial court erred when it imposed additional fines and fees totaling $481 without determining his ability to pay. We reverse the $3,500 restitution award but otherwise affirm the judgment.

## FACTS

On June 15, 2020, Merli took a taxi to Palos Verdes Estates, where he attempted to rob and carjack his driver. The cab driver got out of his car, kept the keys and called the police. Merli fled to the home of victim Allen Lee and threatened him with a large kitchen knife. He demanded Lee give him cash and the keys to Lee's car. Lee complied, and Merli drove away in Lee's car, taking a power drill from the garage on his way out. He was quickly apprehended and arrested.

On December 15, 2021, Merli pleaded no contest to one count of carjacking (§ 215, subd. (a)) and one count of residential robbery (§ 211). The trial court sentenced him to six years and four months in state prison, comprised of the midterm of five years for the carjacking count plus a consecutive term of sixteen

---

[1] "[A] victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime," including but not limited to, certain prescribed actual and reasonable attorney fees. (Pen. Code, § 1202.4, subds. (a) & (f)(3)(H).) We discuss the statute in greater detail in the Part 1(a) of the Discussion section of our opinion.

All further section references are to the Penal Code unless otherwise specified.

months (one-third the midterm) on the robbery count.[2]  The court also imposed various fines and assessments which we discuss below.

At the subsequent victim restitution hearing, the prosecutor sought a restitution award of $90 to have Lee's car cleaned plus $5,000 for fees Lee had paid to attorneys Bruce McGregor and Mark Velez.  The parties stipulated to the admission of McGregor's declaration in support of the fee request. Velez did not submit a declaration.

In his declaration, McGregor stated he was retained by Lee the day after the robbery to act as "Victim's Rights counsel." McGregor affirmed Lee paid flat fees of $3,500 to McGregor and $1,500 to Velez.  Neither attorney kept detailed records of time spent on the matter.  During the 18 months he represented Lee, McGregor provided "legal work associated with visiting the scene of the crime, undertaking both telephonic and email correspondence with the Palos Verdes Estate Police Department and the Torrance Branch of the Los Angeles County District Attorney's Office.  [He] acted as an intermediary between Mr. Lee and those professional agencies. . . .  There were also approximately 15 criminal court appearances in the course of handling this case.  [He] personally attended most of these appearances."

McGregor explained Lee hired Velez because Velez had "intimate knowledge of the systems and procedures of the Palos Verdes Estates Police Department."  McGregor believed Velez also made court appearances on Lee's behalf.

At a restitution hearing, Merli agreed Lee was entitled to recover the $90 cleaning fee but objected to the $5,000 attorney

---

[2]    Merli was on probation at the time and stipulated to a consecutive eight-month term as to the previously imposed but suspended sentence.

3

fees request, arguing it was an unreasonable amount and was not recoverable because the fees were not incurred to recover Lee's economic damages.

The court ordered Merli to make restitution to Lee in the reduced amount of $3,590 ($90 cleaning fee plus $3,500 for McGregor's fees), finding McGregor's fees to be reasonable and allowable under section 1202.4.[3]  Although Lee's actual direct loss from the crime totaled only $90, the court found it was reasonable for Lee to have retained McGregor to investigate the extent of his losses, including the determination of whether any psychological damage resulted from the robbery at knifepoint. Merli timely appealed.[4]

## DISCUSSION

### 1.    Restitution Order

Merli challenges the court's restitution order of $3,500 for McGregor's fees, asserting they were not incurred to recover Lee's economic damages as required under section 1202.4, subdivision (f)(3)(H).  Merli also contends the fees were unreasonable, amounting to nearly 40 times Lee's $90 economic damages.

The People acknowledge Lee's attorney fees were not incurred to recover his economic loss.  Relying on *People v. Kelly* (2020) 59 Cal.App.5th 1172 (*Kelly*), the People instead contend restitution was authorized because the attorney fees were themselves economic damages resulting from Merli's criminal conduct under section 1202.4.

Because the parties agree Lee did not incur $3,500 in attorney fees to recover an economic loss of $90, we address the

---

[3]    The court declined to credit McGregor's statements regarding Velez's fees.  Those fees are not at issue in this appeal.

[4]    There was no evidence that Lee suffered psychological damage or sought related professional help.

4

People's argument the attorney fees themselves constituted recoverable economic loss under section 1202.4 and *Kelly*. We begin with the standard of review and the applicable legal principles.

### a. Applicable Law on Victim Restitution

Section 1202.4, subdivision (a) requires "that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." Under subdivision (f)(3)(H), "To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, . . . [¶] [¶] . . . Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim."

" '[B]ecause [section 1202.4] uses the language "including, but not limited to" these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute.' " (*People v. Henderson* (2018) 20 Cal.App.5th 467, 472–473.)

The economic loss must be "proper, necessary and a logical result of [the defendant's] criminal conduct." (*People v. Lyon* (1996) 49 Cal.App.4th 1521, 1525 (*Lyon*).) A trial court "may only impose restitution for economic losses incurred 'as a result of' the defendant's criminal conduct. [Citation.] Put differently, restitution may be imposed in such cases only to the extent the defendant's criminal conduct played a 'substantial factor' in causing the victim's economic loss. [Citation.] To be a substantial factor, the defendant's criminal conduct must be more

5

than a 'trivial or remote' factor contributing to the victim's loss, but it need not be the 'sole' cause of the loss." (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1101.)

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.] 'Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).)

" 'The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." [Citation.] " 'Where there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " [Citations.]' [Citations.] However, a restitution order 'resting upon a "" "demonstrable error of law" ' constitutes an abuse of the court's discretion. [Citations.]" [Citations.] 'In reviewing the sufficiency of the evidence [to support a factual finding], the " 'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] "If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference

drawn by the trier of fact." (*Millard, supra,* 175 Cal.App.4th at p. 26.)

### b. The People Failed to Make a Prima Facie Showing that Recovery of Lee's Attorney Fees Were Proper, Necessary, and a Logical Result of Merli's Crime

We conclude the People (on behalf of Lee) have failed to make a prima facie showing the attorney fees incurred were "proper, necessary and a logical result of [the defendant's] criminal conduct." (*Lyon, supra,* 49 Cal.App.4th at p. 1525.)

*Kelly* is instructive regarding when attorney fees may be recovered as economic damages. In *Kelly,* Charles Schwab Co., Inc. obtained a restraining order against the defendant, who had been terminated and was threatening Schwab employees. (*Kelly, supra,* 59 Cal.App.5th at p. 1176.) Posing as someone else, the defendant violated the restraining order by contacting Schwab employees and obtaining information he was not authorized to receive. Schwab's lawyer, who had previously obtained the restraining order, investigated and provided law enforcement with evidence of the defendant's false personation of another, unauthorized use of personal information, and violation of the restraining order. The defendant was convicted of those crimes. (*Id.* at p. 1177.)

At the restitution hearing, Schwab sought reimbursement for attorney fees and costs to obtain the restraining order, to investigate and prove the violation of the restraining order, and to assist the prosecution of the case. Schwab's request for restitution was supported by the declaration of its lawyer with billing records, a prosecutor's written statement, two letters containing statements of Schwab's loss submitted to the probation department, and a probation memorandum. (*Kelly, supra,* 59 Cal.App.5th at p. 1178.) The trial court awarded

7

Schwab $221,140.40 in restitution, representing the attorney fees paid to its counsel for investigating the restraining order violations and assisting the prosecutor. The court declined to award any fees Schwab incurred to obtain the restraining order. (*Ibid.*)

The Court of Appeal affirmed, holding expenses incurred to protect the victim from the defendant's ongoing criminal conduct and to assist in the investigation and prosecution of the defendant were " ' "a logical result of appellant's criminal conduct." ' " (*Kelly, supra,* 59 Cal.App.5th at p. 1180.)

Unlike *Kelly*, McGregor's declaration does not demonstrate he performed specific legal work to protect his client's rights, or to aid in investigating or prosecuting the crime.[5] McGregor generically described the objectives of a "Victim's Rights counsel" as "legal work to obtain restitution recovery, representation during victim interview obligations, representation to obtain protective orders, and providing impact statements and case resolution input to government prosecutors during the appropriate stages of criminal court proceedings." Yet, McGregor did not state he actually did any of these things. Indeed, nothing in the record shows he sought to recover victim restitution for Lee, attended victim interviews, obtained a protective order, submitted a victim impact statement, or provided case resolution input.

Instead, McGregor stated he visited the crime scene, attended nearly 15 court hearings, and communicated with the prosecutor and law enforcement without attesting to the purpose or outcome of this work. McGregor failed to link the objectives of

---

[5] Nor are we persuaded by *People v. Moore* (2009) 177 Cal.App.4th 1229, also cited by the People. In *Moore*, the victim recovered lost wages for his attendance at court hearings, not attorney fees. (*Id.* at p. 1231.)

a Victim's Rights counsel to his actual work on the case. Without this link, it is equally likely Lee could have hired McGregor merely to keep him updated on the progress of the case, to investigate the circumstances of the crime, or to influence how law enforcement and the prosecution proceeded against Merli. We do not know because McGregor provides no explanation for his work.

The facts of this case are straightforward: On June 15, 2020, Merli entered Lee's home and unlawfully took his car, money, and a power drill. The police apprehended and arrested Merli shortly thereafter. A felony complaint was filed less than 48 hours later, charging Merli with first degree robbery and carjacking of Lee.[6] McGregor does not explain how his work furthered Lee's rights as a victim or aided law enforcement in investigating or gathering evidence in this relatively straightforward crime.

We recognize Lee would not have hired McGregor if not for Merli's crime. But the People have failed to present evidence that McGregor's work was a necessary or logical result of Merli's conduct.

## 2. *Fines and Fees*

Merli next contends the trial court violated his due process rights when it imposed assessments and fines totaling $481 without determining his ability to pay.[7] (*People v. Dueñas* (2019)

---

[6] We need not set out the charges relating to the taxi driver.

[7] This issue is currently before the California Supreme Court. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844 [the high court will determine whether a trial court must "consider a defendant's ability to pay before imposing or executing fines, fees, and assessments," and if so, "which party bears the burden of proof regarding defendant's inability to pay."].)

30 Cal.App.5th 1157, 1168 (*Dueñas*).)  Merli has forfeited this contention.

At sentencing, the court ordered Merli to pay:  a $300 restitution fine pursuant to Penal Code section 1202.4, subd. (b); a $300 parole revocation restitution fine, which was suspended unless parole is revoked, pursuant to Penal Code section 1202.45; a $40 court operations assessment for each count, totaling $80, pursuant to Penal Code section 1465.8; a $30 criminal conviction assessment for each count, totaling $60, pursuant to Government Code section 70373; and a $10 crime prevention fine pursuant to Penal Code section 1202.5 plus a $29 penalty assessment and a 20 percent criminal surcharge, amounting to $2.

Merli raised no objections regarding the fines and fees imposed.  Nor does the record show he expressed any concern about an inability to pay, much less submit evidence of it to the trial court.  His argument is therefore forfeited.  (*People v. Aguilar* (2015) 60 Cal.4th 862, 864 [a defendant's failure to challenge the fees and fines imposed at sentencing precludes him from doing so on appeal]; *People v. Avila* (2009) 46 Cal.4th 680, 729; *People v. Flowers* (2022) 81 Cal.App.5th 680, 687.)

We reject Merli's contention that this raises a pure question of law and an objection was not necessary at the trial level.  His ability to pay is a factual question.  (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153; see *People v. Scott* (1994) 9 Cal.4th 331, 354 [claims of error in the trial court's exercise of its sentencing discretion are "essentially factual," and thus distinct from ' "clear and correctable" ' legal errors that appellate courts can redress on appeal 'independent of any factual issues presented by the record at sentencing.' "].)

10

### *DISPOSITION*

That part of the restitution order awarding $3,500 for attorney's fees is reversed.  The trial court is directed to prepare a corrected abstract of judgment reflecting restitution in the amount of $90.  The trial court is directed to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

MOOR, J.

11