Filed 3/14/25  P. v. Lynch CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>THOMAS JOSEPH LYNCH,<br><br>    Defendant and Appellant. | G063226<br><br>(Super. Ct. No. 21WF1734)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Erin Rowe, Judge. Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

Thomas Joseph Lynch appeals the trial court's order directing him to pay $2,000 to the California Victim Compensation Board (the Board) for Jane Doe's relocation expenses.[1] He contends the order should be reversed because the expenses did not result from his criminal conduct. We find no error and affirm the restitution order.

FACTUAL AND PROCEDURAL BACKGROUND

I.

THE CHARGES AND PLEA

In a first amended complaint, Lynch was charged with: stalking Jane whilst a restraining order was in effect on and between June 15, 2021 and June 28, 2021 (Pen. Code, § 646.9, subd. (b), count 1);[2] dissuading a witness, Jane, by force or threat on June 28, 2021 (§ 136.1, subd. (c)(1), count 2); attempting to dissuade a witness, Jane, on June 28, 2021 (§ 136.1, subd. (a)(2), count 3); making a criminal threat to Jane on June 28, 2021 (§ 422, subd. (a), count 4); six misdemeanor counts of violating a protective order (§ 166, subd. (c)(1)) on June 28, 2021 (counts 5 & 6), June 16 (count 8), June 15 (counts 10, 11, 12); misdemeanor aggravated trespass of Jane's dwelling on June 15, 2021 (§ 602.5, subd. (b), count 7); making a criminal threat to John (§ 422, subd. (a), count 9); misdemeanor dissuading a witness, Jane, from testifying on June 28, 2021 (§ 136.1, subd. (a)(1), count 13); and misdemeanor domestic battery with corporal injury upon Jane on July 26, 2020 (§ 273.5, subd. (a), count 14).

---

[1] In the trial court, the two victims were identified as Jane Doe and John Doe. We similarly use these designations on appeal and refer to them by these first names to avoid confusion. No disrespect is intended.

[2] Undesignated statutory references are to the Penal Code.

In a negotiated agreement, Lynch pleaded guilty to: stalking Jane with a restraining order in effect (count 1); making a criminal threat to Jane (count 4); making a criminal threat to John (count 9); misdemeanor dissuading a witness from testifying (count 13); and misdemeanor domestic battery with corporal injury (count 14). The court reduced the criminal threat conviction in count 9 to a misdemeanor and dismissed the remaining charges with a *Harvey*[3] waiver. Lynch was placed on supervised probation for a period of four years, with various terms and conditions, including he serve 364 days in county jail. (He was credited with 548 days in custody credits.) The court ordered Lynch to pay restitution on all counts in an amount to be determined by the probation department, and Lynch was informed he could request a hearing if he disagreed with the amount.

## II.

### RESTITUTION HEARING AND ORDER

Lynch contested the amount of restitution, and the matter was set for a hearing. The prosecution filed a restitution brief, requesting Lynch be ordered to pay $5,600 in direct restitution to Jane for losses she suffered and pay $2,000 to the Board. The restitution brief included documentation from the Board showing it had paid Jane $2,000 for relocation expenses.

At the restitution hearing, Lynch's counsel provided a $3,000 cashier's check payable to Jane, which the parties agreed would satisfy the direct victim restitution owed to her. (Lynch does not challenge this amount.) As for the Board's request for $2,000 for Jane's relocation expenses, the

---

[3] *People v. Harvey* (1979) 25 Cal.3d 754. Lynch's plea form included the following language: "Harvey Waiver: I understand I will pay restitution on [all counts] and dismissed count(s) 2, 3, 5, 6, 7, 8, 10, 11, 12 pursuant to Harvey waiver as part of the plea agreement." (Bold omitted.)

3

parties agreed to submit the matter to the court based on the Board's documentation.

The Board's documentation included a "law enforcement relocation verification form" (capitalization omitted) completed by a detective with the Huntington Beach Police Department. On the form, the detective summarized Lynch's criminal conduct and stated: "The victim's relocation is necessary to protect her from the defendant." This attestation is a requirement for obtaining relocation expenses from the Board. (Gov. Code, § 13957, subd. (a)(7)(A).) To support her claim for relocation expenses, Jane submitted to the Board a copy of a rental agreement dated July 1, 2021, showing the first month's rent was $1,000 and payment of a required security deposit in the same amount.

Prior to relocating, Jane lived with Lynch and another individual in a residence, and all three were on the lease. It appears they were being evicted because of subletting, which violated the lease's terms. At the restitution hearing, Lynch asserted the Board was not entitled to recoup the money it paid for Jane's relocation expenses. He argued the claimed relocation expenses resulted from Jane's eviction from their former residence, which required her to move, obtain a new residence, and pay a new deposit, irrespective of his conduct. Lynch asserted there was no economic loss because Jane's rent at the new residence was less than her rent at the former residence, she would have to pay rent regardless of where she lived, and she was not paying rent at two locations. He also argued payment of the security deposit was not an economic loss because it would be returned at the end of her lease as long as she complied with the lease agreement. He contended Jane had not suffered an economic loss and it would be "a windfall [to the Board] if they got twice as much money back."

4

The prosecutor argued the Board was entitled to repayment. He relayed to the court Jane's representation she moved out of the residence because of the circumstances between her and Lynch and the eviction notice resulted from Lynch violating the lease by subletting the residence to other people.

The court found restitution to the Board was appropriate and ordered Lynch to pay $2,000 to the Board for Jane's relocation expenses. The court noted under section 1202.4, subdivision (f)(3), a victim may recover restitution for expenses to relocate away from a defendant if necessary for the victim's personal safety. Looking at the timing of Lynch's violations of the domestic violence restraining order on June 30, 2021 and Jane signing a new rental agreement the next day, the court found it reasonable to believe Jane moved to effectuate her personal safety. The court issued an order directing Lynch to pay $2,000 to the Board plus interest at 10 percent per year from the date of the hearing. Lynch timely appealed the restitution order.

## DISCUSSION

At a restitution hearing, once the prosecution makes a prima facie showing of the victim's "economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.)

## I.

### STANDARD OF REVIEW

"'The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." [Citation.] "'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be

5

found by the reviewing court.'" [Citations.]' [Citation.] However, a restitution order 'resting upon a "'demonstrable error of law'" constitutes an abuse of the court's discretion. [Citation.]' [Citation.] 'In reviewing the sufficiency of the evidence [to support a factual finding], the "'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citation.]'" (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.)

II.

VICTIM RESTITUTION

"Under the California Constitution, a victim is entitled to restitution. (Cal. Const., art. I, § 28, subd. (b)(13).)" (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 95.) With limited exceptions not relevant here, section 1202.4 requires the court to order "full restitution" in every case "in which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4, subd. (f).) Under section 1202.4, subdivision (f)(3), the court must determine the "dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct," including "[e]xpenses incurred by an adult victim in relocating away from the defendant." (*Id.*, subd. (f)(3)(I).) This subdivision specifies such relocation expenses "shall be verified by law

6

enforcement to be necessary for the personal safety of the victim . . ." and can include "deposits for rental housing" and temporary lodging expenses. (*Ibid.*)

Crime victims may apply to the Board to obtain compensation from the state restitution fund for the "pecuniary losses they suffer as a direct result of criminal acts." (Gov. Code, § 13950, subds. (a), (b); accord, *People v. Holman* (2013) 214 Cal.App.4th 1438, 1452.) "The Legislature has enacted statutes governing the procedure by which crime victims may obtain compensation from the restitution fund through the [B]oard." (*In re S.E.* (2020) 46 Cal.App.5th 795, 810.) Government Code section 13957, subdivision (a)(7)(A) provides the Board may aid the victim with relocation expenses "if the expenses are determined by law enforcement to be necessary for the personal safety of the victim." Moreover, an "application for compensation must be verified under penalty of perjury by the person seeking compensation" and the Board must verify the expense before payment can be made. (*In re S.E., supra*, 46 Cal.App.5th at p. 810.)

"[S]ection 1202.4, subdivision (f)(4) includes special provisions that apply when state funds are used to provide assistance to or on behalf of a victim." (*People v. Lockwood, supra*, 214 Cal.App.4th at p. 96.)  Section 1202.4, subdivision (f)(4) provides:

"(A) If, as a result of the defendant's conduct, the Restitution Fund has provided assistance to . . . a victim . . . , the amount of assistance provided shall be presumed to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered.

"(B) The amount of assistance provided by the Restitution Fund shall be established by copies of bills submitted to the [Board] reflecting the amount paid by the board and [the type of expenses paid]. Certified copies of these bills provided by the board . . . , together with a statement made under

7

penalty of perjury by the custodian of records that those bills were submitted to and were paid by the board, shall be sufficient to meet this requirement."

## III.

### THE COURT PROPERLY ORDERED LYNCH TO PAY RESTITUTION TO THE BOARD

Lynch contends Jane's relocation expenses resulted not from his criminal conduct but because they were evicted from their residence for subletting. He asserts these expenses fall "outside the scope of the restitution statute" because they are not an economic loss but "represent routine living costs" Jane would have incurred regardless of his actions. We agree with the Attorney General substantial evidence supports the court's restitution order and therefore there was no abuse of the court's discretion.

It is undisputed, the Board provided Jane $2,000 for relocation expenses, based on the Board's restitution request and the documents it submitted to support the request. These documents included a verification by a law enforcement officer that it was necessary for Jane to relocate for her personal safety and an explanation as to why. The documentation provided by the Board was prima facie evidence Jane's relocation expenses were directly related to Lynch's conduct and provided an adequate factual basis for the restitution request. (See *In re S.E., supra*, 46 Cal.App.5th at p. 811 [court could rely on certified documents from Board as prima facie evidence victims' counseling was directly related to defendant's conduct].)

Lynch did not carry his burden of refuting this evidence. In finding restitution to the Board for Jane's relocation expenses was appropriate, the court considered the timing of the domestic violence incidents and Jane's move to a new residence. The record shows between June 15 and June 28, 2021, Lynch stalked Jane, violated the restraining order at least six times, and made multiple threats to her. The court noted

the police responded to Jane's residence on June 30, 2021 regarding Lynch violating the domestic violence restraining order and Jane signed a new rental agreement the next day. The court analyzed this evidence as well as the information concerning the eviction and found Jane moved away from Lynch to secure her personal safety. Thus, Jane's relocation expenses were a direct result of Lynch's criminal conduct.

The eviction may have required Lynch, Jane, and their roommate to move from the residence, but Lynch's criminal conduct required Jane to move away from Lynch for her personal safety. Moreover, for restitution, the criminal conduct in question need not be the only cause of the victim's loss, but merely must have played a "substantial factor" in causing the loss. (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1101.) "To be a substantial factor, the defendant's criminal conduct must be more than a 'trivial or remote' factor contributing to the victim's loss, but it need not be the 'sole' cause of the loss." (*Ibid*; accord, *In re S.E., supra*, 46 Cal.App.5th at p. 811, fn. 9.) Here, Lynch's criminal conduct was a substantial factor in Jane's relocation.

We conclude the court did not abuse its discretion in ordering Lynch to pay $2,000 restitution to the Board.

DISPOSITION

The October 23, 2023 order directing Lynch to pay $2,000 to the California Victim Compensation Board plus 10 percent interest per year is affirmed.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.