Filed 10/10/25  P. v. Kincy CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>AARON KINCY,<br><br>      Defendant and Appellant. | D084564<br><br><br>(Super. Ct. No. SCN450490) |

APPEAL from an order of the Superior Court of San Diego County, Brad A. Weinreb, Judge.  Affirmed.

Annie Fraser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Aaron Kincy appeals from a restitution order requiring him to compensate a theft victim for security services.  He contends such expenses are recoverable only in cases involving a violent felony or domestic violence.

We disagree, and conclude the expenses are recoverable in this case. Kincy also disputes the amount of the award. The trial court used a rational method to determine the loss and we conclude Kincy failed to show error. Accordingly, we affirm.

BACKGROUND

The San Diego County District Attorney charged Kincy and three codefendants with 42 counts, including organized retail theft in concert, grand theft, burglary, attempted burglary, possession of controlled substances, and possession of a firearm. The crimes were alleged to have occurred from June 30, 2023, to December 21, 2023. The theft charges stemmed from break-ins at BevMo! stores throughout Southern California, and the burglary charges arose from efforts to steal from various retail pharmacies. Kincy himself was charged with 21 thefts from BevMo! stores. The complaint alleges the dollar value of lost product for each of those thefts. The value of lost product from the 21 theft counts alleged in the complaint against Kincy totaled $111,130.

Kincy pleaded guilty to six felonies, including one count of retail theft, three counts of grand theft, and two counts of burglary (counts 12, 13, 18, 23, 24, and 35). The parties stipulated to a sentence of five years, four months. While his pleas covered only four theft counts, as part of his plea Kincy entered a *Harvey* waiver,[1] agreeing that the sentencing judge could consider the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when ordering restitution.

At the restitution hearing, Michael Cavallo, senior manager of loss prevention for BevMo!, testified that the company suffered 36 thefts at 26 different stores between June and December 2023. Ten locations were

_____

[1] *People v. Harvey* (1979) 25 Cal.3d 754.

2

targeted more than once. BevMo! identified these thefts as associated with the same individuals through similarity in vehicles, articles of clothing, and the manner in which the thefts were carried out. Between 1:00 and 4:00 a.m., the perpetrators smashed the glass in the front of each store, overcame barriers like shopping carts or other barricades, and stole high-end Tequila and Cognac.

Initially, BevMo! kept store lights on overnight to deter the break-ins. Then it tried to barricade the doors with shopping carts, pallets and other large objects. After these efforts failed, BevMo! hired an outside security company to patrol the outside of 12 stores deemed the highest risk because they had already been targeted. The security patrols started October 21, 2023. That night BevMo! suffered three more break-ins at stores without security. BevMo! thereafter expanded security services to 47 more locations, to cover nearly all of its Southern California stores. BevMo! terminated security services the day Kincy and a codefendant were arrested in December.

Cavallo created Exhibit 1, a spreadsheet that listed store location, dates of service, hours worked, hourly rate, and the total cost of security guard coverage by location. Some of the figures in his chart, such as the dates of service and number of hours, came from a portal maintained by the security company. BevMo! paid a total of $882,938.85 for security guards at all 59 stores.

In addition to the cost to hire security guards, Cavallo testified about BevMo!'s losses from stolen products. To determine the amount of loss after a theft, a BevMo! employee would scan the product tag and compare the amount of product actually in the store to the amount recorded in the system for that store. Cavallo learned from the probation department which thefts

Kincy had been charged with committing and compiled the loss figures for those incidents. He thought Kincy had been charged with 22 thefts[2] from BevMo! stores. Cavallo testified that the losses due to the value of stolen items attributable to Kincy was $103,959. He provided the economic losses for each of the incidents to the probation office. The probation report listed the restitution sought by BevMo! for each store.[3]

Cavallo also testified about repair costs incurred by BevMo!. After each theft, BevMo! boarded up the broken windows, then repaired the glass within a day or two. The total cost of repairs for the 22 incidents was $36,389. Cavallo could not specify on the stand which stores he included in his list of 22 incidents.

On cross-examination, the defense challenged certain entries in Cavallo's spreadsheet, for example asking why there were two entries for the same date at the same location, why some entries reflected more than eight hours a shift, and why there were discrepancies in dates. Cavallo acknowledged that the security service may have erred in entering data.

The court found based on Cavello's "particularly reliable" testimony that the People had established the product losses, repair costs, and security expenses BevMo! incurred due to Kincy's conduct in this case. The court ordered Kincy to pay $103,959 for items taken and $36,389 for store repairs. The court found these figures "specifically and directly reflect" the losses from

[2]     The complaint and amended complaint allege Kincy committed 21 thefts of BevMo! stores.

[3]     The probation report provides losses for 19 of the 21 thefts Kincy was originally charged with committing. Losses for the remaining two thefts, at the Encinitas and Carmel Mountain Ranch (associated with Counts 38 and 39), were listed in the complaint and amended complaint.

the locations Kincy targeted. The court also found BevMo!'s hiring of security services reasonable, after it had unsuccessfully tried "less financially restrictive ways" of addressing the thefts, initially hired security for only 12 locations before expanding to 59 stores, and mitigated expenses by terminating security services when the codefendants were caught. The court determined there was a sufficient nexus between Kincy and his codefendant's criminal conduct and BevMo!'s security costs and ordered them to be jointly and severally liable for the $882,938.85 total cost of the security guards at all locations. The total restitution ordered for Kincy amounted to $1,023,286.

ANALYSIS

1. *General Principles*

The California constitution guarantees crime victims the right to restitution for losses caused by criminal activity. (Cal. Const., art. I, § 28, subd. (b); see *People v. Giordano* (2007) 42 Cal.4th 644, 652 (*Giordano*).) Penal Code[4] section 1202.4, subdivision (a)(1) provides: "It is the intent of the Legislature that a victim of a crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." Consistent with the constitutional directive and legislative intent, section 1202.4, subdivision (f)(3) provides: "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following. . . ." The statute then lists 12 categories of "economic loss," including: "(J) Expenses to install or increase residential security incurred related to a violation of Section 273.5, or a violent felony as defined in subdivision (c) of Section 667.5, including, but not limited to, a

---

4    All further statutory references are to the Penal Code.

5

home security device or system, or replacing or increasing the number of locks." (§ 1202.4, subd. (f)(3)(J).)

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.]." (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*)). Once the People have made a prima facie showing of the victim's loss, "the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*Ibid*.) The trial court " 'must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.)

We generally review restitution orders for an abuse of discretion. (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1098.) However, where the specific issue is whether a court has the authority to issue restitution, we review that question of law independently, and where the relevant question is whether the court's factual findings support restitution, we review those findings for substantial evidence. (*Ibid*.) In reviewing the sufficiency of the evidence, the " ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings. [Citations.]' " (*People v. Baker* (2005) 126 Cal.App.4th 463, 468–469 (*Baker*).) "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court. [Citations.]" (*Id.* at p. 467.)

2. *Restitution for security expenses was authorized*

Kincy contends the language of subdivision (f)(3)(J), precludes restitution for a security system unless it is related to a violent felony or

6

domestic violence. We disagree. Subdivision (f)(3)(J) of section 1202.4 *mandates* restitution for "[e]xpenses to install or increase residential security incurred related to a violation of Section 273.5, or a violent felony as defined in subdivision (c) of Section 667.5." (*Ibid.*) Kincy accurately points out that he was not convicted of domestic violence or a violent felony. We would agree the trial court was not mandated to order restitution for BevMo!'s security services under subdivision (f)(3)(J).

But subdivision (f)(3)(J), is not the sole source of a court's authority to order restitution, and nothing in its plain language limits the court's discretionary authority to order restitution for security services on the more general grounds authorized by section 1202.4, subdivisions (a)(1) and (f)(3), which direct reimbursement for every economic loss incurred by the victim as the result of the defendant's criminal conduct. The Court of Appeal for the Third District so held in *People v. Henderson* (2018) 20 Cal.App.5th 467 (*Henderson*): "[W]here a victim incurs the economic loss of installing a security system as a direct result of a defendant's conduct, the trial court may include that amount in a victim restitution award regardless of the crime of conviction." (*Id.* at p. 472.) The Court of Appeal for the First District, Division Two, adopted the same reading of the statute. (*People v. Brooks* (2018) 23 Cal.App.5th 932, 946 (*Brooks*).)

Kincy urges us to reject *Henderson* and *Brooks* and follow the reasoning of *People v. Salas* (2017) 9 Cal.App.5th 736 (*Salas*). He argues the 2018 amendment to section 1202.4, subdivision (f)(3)(J), supports his approach. In *Salas*, the Court of Appeal for the Fourth District, Division One, applied various canons of statutory construction and examined the legislative history of the statute to conclude the legislature intended to preclude restitution for

7

security systems for circumstances other than as described in subdivision (f)(3)(J) of section 1202.4.

*Henderson* agreed with *Salas* that under section 1202.4, subdivision (f)(3)(J), restitution is mandated for security services related to violent felonies, but disagreed with the implication in *Salas* that security expenses could not be ordered for nonviolent crimes as an exercise of the trial court's discretion under the broader language of subdivision (f)(3), concerning economic loss. (*Henderson*, 20 Cal.App.5th at pp. 472–473.) Similarly, *Brooks* rejected the *Salas* court's narrow interpretation of subdivision (f)(3)(J) and concluded that the broad provisions at section 1202.4 authorized a trial court to order restitution for security costs incurred by a victim of non-violent crimes. (*Brooks, supra*, 23 Cal.App.5th at p. 946.)

We agree with the statutory analyses set forth in *Henderson* and *Brooks* and respectfully disagree with the reading of the statute advanced in *Salas*. Like *Henderson* and *Brooks*, we conclude that the plain language of the statute is inclusive rather than exclusive. The 2018 amendment to section 1202.4, which added domestic violence as a crime for which residential security expenses are recoverable in subdivision (f)(3)(J), does not change our conclusion. Nothing about that change indicates the legislature intended to limit residential security expenses only to cases involving a violent felony or domestic violence. It added an additional category of crimes, but did not change the "including, but not limited to" language in subdivision (f)(3) identifying the subsequent list as representative examples.

In sum, section 1202.4, subdivision (f)(3), broadly grants the trial court authority to award restitution "to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following . . ." We

8

read the listed items as merely representative examples of recoverable expenses. Therefore, the trial court, in its discretion, may award security expenses where the victim incurred the expenses as a result of the defendant's criminal conduct.

We conclude the trial court was authorized to award BevMo! the costs of its security expenses incurred due to Kincy's thefts.

### 3. *Restitution award was reasonable*

Kincy contends the restitution award for security services was not reasonable because BevMo! hired security guards to deter future crimes, not to compensate for losses from past crimes, and there was no nexus between the costs of security at 59 stores and Kincy's 21 thefts. Kincy further contends the restitution award lacked a "rational and factual basis" because the testifying witness did not provide receipts or documentation and could not identify the 22 stores included in his totals.

First, restitution is awarded for any economic loss "incurred as a result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3).) This includes expenses incurred after the crime has been committed. Our Supreme Court has recognized that "[m]any, if not all, of the categories of loss compensable as direct restitution include losses that are incurred after the occurrence of the crime, and which may continue to be incurred for a substantial period of time following a restitution hearing." (*Giordano, supra*, 42 Cal.4th at pp. 657–658 [affirming restitution for victim's spouse's lost future economic support due to death of victim].) Covering expenses to prevent future harm is expressly completed in the statutory scheme for restitution. Security systems, which are authorized by section 1202.4, subdivision (f)(3)(J), are generally designed to protect against and deter future crimes. Presumably if a security system were in place beforehand, the crime would not have

9

happened. (See *Brooks, supra*, 23 Cal.App.5th at pp. 938–939 [affirming award of restitution for the installation of a home alarm system, new door locks, and dead bolts *after* defendant's burglary of the residence].)

In any case, the timing of the expenses is not the relevant inquiry. Rather, the material question is whether the defendant's conduct was a "substantial factor" in causing the victim's loss. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1322.) The evidence showed BevMo!'s security costs arose in direct response to the ongoing thefts committed by Kincy and his codefendants between October and December 2023. BevMo! unsuccessfully tried other measures before resorting to hiring the security guards. Even after it decided to hire security, it tried to anticipate which stores would be targeted and limited its expenses at first to 12 stores. BevMo!, unlike Kincy and his codefendants, did not know which store would be the next target or when the thefts would stop. As the trial court noted, BevMo! did not hire security for all 161 stores, nor did it pay for 24-hour security patrols. On this record there was substantial evidence to support the trial court's conclusion that it was reasonable for BevMo! to expand security services to 59 stores to combat the "mass surge of break-ins" perpetrated by Kincy and his codefendants. We are satisfied the trial court did not abuse its discretion in finding that the People had demonstrated a sufficient nexus between the security services and Kincy's crimes.

We are also satisfied the court's restitution order had a "rational and factual basis." (*Baker, supra*, 126 Cal.App.4th at p. 467.) We defer to the trial court's conclusion that Cavallo was "particularly reliable" and attributing to him an "immense amount of credibility." The trial court concluded Cavallo "matched up" Kincy's conduct to "specific stores and locations," and credibly identified "for each particular defendant how much

10

was taken and what was broken and what they're responsible for." There was substantial evidence supporting these findings. Cavallo testified that the product losses and repair costs attributed to Kincy were the losses associated with the thefts with which Kincy had been charged, and said he provided specific figures for each store to probation. The probation report listed losses associated with the individual counts against Kincy, as Kincy acknowledges on appeal. Indeed, both the initial complaint and amended complaint identified the specific store, the date of the theft, and an estimated amount of product loss for each theft Kincy was accused of committing. Cavallo's detailed testimony thus sufficed as a prima facie showing of the losses for product and facility repairs attributable to Kincy. (*Millard, supra*, 175 Cal.App.4th at p. 26 [victim's testimony may suffice as prima facie showing of loss].)

Kincy argues that because Cavallo failed to explain how he determined the loss or supply any supporting documentation, the People failed to offer any proof to meet the prima facie standard. But a prima facie showing of loss does not, as Kincy appears to contend, require any specific documentation, such as receipts or a list specifying the 21 thefts by store. The victim need not "produce detailed billing records, receipts, or business invoices," and the trial court has substantial discretion to determine which party met their respective burdens. (*People v. Kelly* (2020) 59 Cal.App.5th 1172, 1183). Cavallo credibly explained how BevMo! calculated its product losses after a theft, explained that BevMo! repaired glass windows broken by Kincy and his codefendants, and supplied an aggregate total of these losses for the relevant incidents. The People having made a prima facie case, the burden shifted to Kincy to show that the court should have ordered another amount. (*Millard, supra*, 175 Cal.App.4th at p. 26.) Kincy had notice of the loss estimates for

each incident as alleged in the complaint, amended complaint, and probation report, and had an opportunity to challenge the loss figures, including by raising below the objections he makes now about discrepancies between loss amounts in the police reports and BevMo!'s figures, and BevMo!'s verification of some figures but not others.

Ultimately, the trial court's restitution order was reasonable and had a factual and rational basis. We conclude the court did not abuse its discretion.

DISPOSITION

The trial court's restitution order is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


HUFFMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.