Filed 9/6/24  P. v. Vo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HONG VO,<br><br>    Defendant and Appellant. | H050473<br>(Santa Clara County<br> Super. Ct. No. C1909291) |

In a negotiated disposition, defendant Hong Vo pleaded no contest to one count of identity theft (Pen. Code § 530.5, subd. (a).).  The court granted her two years formal probation, which included a six-month county jail term and a general order of restitution holding her jointly and severally liable with her co-defendant in the amount of $184,142.  Vo challenges the restitution order, contending joint and several liability is not supported by an adequate factual basis.  Alternatively, she asserts the court miscalculated the restitution award.  The Attorney General concedes that the restitution award is overstated by $250.  We will reduce the award by that amount and affirm the judgment as so modified.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This factual summary is taken from the presentence probation report, the prosecution's sentencing memorandum, and victim testimony and other evidence from the restitution hearing.  Vo was a real estate broker who represented Dennis A. in the purchase of a house in San Jose.  (We refer to Dennis A. by his first name to preserve his

1

anonymity [California Court Rules, rule 8.90 (a)(4)], intending no familiarity or disrespect.) Helen Spangler, Vo's co-defendant, introduced Dennis to Vo and assisted with the purchase. Dennis believed that Vo and Spangler had a "close relationship" and were "business partners."

Dennis did not qualify for financing to purchase the property, so Vo offered to purchase it for him with the understanding that he would take immediate possession and live there and she would transfer title to him either after providing him a loan through her company, Greentronix, or after he obtained his own financing with Spangler's assistance. Dennis deposited $200,000 for his future down payment into an escrow account Spangler controlled, and $23,250 as an earnest money deposit. Although Dennis assumed Vo bought the house with cash, she actually financed the purchase with two high-interest, short term loans.

Dennis lived in the house for sixteen months without paying rent or making mortgage payments. He paid for various repairs and improvements to the property, including a television antenna. During that time, he frequently asked Spangler about his loan eligibility status. Spangler assured Dennis "she was working on it," explaining that his income from his new job needed to be "seasoned," and he "had nothing to worry about."

Dennis decided to move out of the house after becoming uncomfortable with the level of crime in the neighborhood. He attempted to transfer the $200,000 he thought was still in escrow to use as a down payment on another property. At that point, he discovered the escrow account was empty, and that Spangler had forged his signature and diverted $200,000 to Greentronix. Dennis learned Vo had used his $200,000 to refinance her high-interest loans on the property without his knowledge or authorization. Vo acknowledged to Dennis that she had received the $200,000 from Spangler and initially agreed to return the money after deducting the rental value for the time he had lived at the

2

property. Vo later told him she would only return $10,000. She ultimately paid him nothing.

Vo sold the property in November 2016. She never transferred title to or obtained a loan for Dennis. As a result of Vo's and Spangler's actions, Dennis lost his deposit ($23,250), his down payment ($200,000), the cost of the television antenna ($92), and the cost of accounting fees necessary to amend his tax return to reflect his losses ($550).

The Santa Clara County District Attorney charged Vo and Spangler by felony complaint. Vo was charged with two counts of grand theft of personal property over $950 (§ 487, subd. (a); counts 2 and 3); use of personal identifying information without authorization (§ 530.5, subd. (a); count 4); and mortgage fraud (§ 532f, subd. (a)(2); count 5). The complaint also alleged the charged financial crimes involved taking more than $100,000. (§ 186.11, subds. (a)(1) & (3).) Vo pleaded no contest to one count of identity theft. The remaining counts and allegations in the complaint against her were dismissed with her waiver under *People v. Harvey* (1979) 25 Cal.3d 754, to allow the trial court to consider the dismissed counts in its disposition. (*People v. Weatherton* (2015) 238 Cal.App.4th 676, 681.)

Following several restitution hearings, including a final hearing where Dennis testified, the trial court ordered restitution pursuant to Penal Code section 1203.1 (as Vo was granted probation), Penal Code section 1202.4 (unspecified statutory references are to the Penal Code), and California Constitution Article 1, section 28 (b)(13). The court found Vo's actions were a substantial factor in Dennis's loss, including her false promise to transfer the property, knowingly using the $200,000 to pay off the high-interest loans with the awareness that the money came from Spangler's forgery of escrow documents, failing to transfer the home and selling it without Dennis receiving any benefit of his original $23,250 deposit or the $200,000 that Spangler's actions caused to accrue to Vo's benefit. Based on Dennis's estimate of the property's monthly rental value at $2,500, the

3

court deducted $40,000 to account for the sixteen months Dennis lived in the property without paying rent.

The court held Vo and Spangler jointly and severally responsible for restitution to Dennis as requested in the sum of $184,142, based on a $23,500 "earnest money" deposit; the $200,000 down payment (less $40,000 for 16 months of rental value at $2,500 per month); $550 for amended tax returns; and $92 for the television antenna.

## II.    DISCUSSION

Vo argues the trial court abused its discretion by holding her jointly and severally liable with Spangler for Dennis's loss. She contends Spangler was entirely responsible for Dennis's loss because it was Spangler who forged his signature and transferred the escrow funds without his knowledge or consent. Vo asserts she was unaware of Spangler's illegal actions and insists that "none of her conduct was criminal" because Dennis "understood that the money was going toward payments" on the property, "and all of the funds were actually used for that purpose."

Vo challenges the trial court's authority under section 1202.4, which mandates direct victim restitution in "every case in which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4, subd. (f).)[1] Section 1202.4 limits restitution to losses caused by criminal conduct for which the defendant was convicted. (*Czirban*, at p. 1063.); see also *People v. Woods* (2008) 161 Cal.App.4th 1045, 1049 ["Courts have interpreted section 1202.4 as limiting restitution awards to those losses arising out of the criminal activity that formed the basis of the conviction."].)

_____

[1] Vo does not address the fact that the trial court also ordered restitution under section 1203.1 as a condition of probation. Because we can affirm the restitution order under section 1202.4's narrower standard, we observe without deciding that the order also would be affirmed under section 1203.1's more permissive standard for ordering victim restitution as a probation condition. (See *People v Czirban* (2022) 77 Cal.App.5th 1050, 1063 [section 1203.1's "ambit is necessarily broader" than section 1202.4].)

4

A direct victim restitution order under section 1202.4 " 'is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious. No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt." … Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim.' " (*Czirban*, *supra*, 77 Cal.App.5th at p. 1064.)

## A. VO IS RESPONSIBLE FOR DENNIS'S LOSS

Vo argues she was not responsible for Dennis's loss, but she admitted her culpability by pleading no contest to count 4, identity theft. Her plea is the same as that of a plea of guilty, which admits every element of the crime charged for all purposes, and " 'is the "legal equivalent" of a "verdict" and is "tantamount" to a "finding." ' " (*People v. Wallace* (2004) 33 Cal.4th 738, 749 (*Wallace*); Pen. Code, § 1016, subd. (3) ["The legal effect of such a [nolo contendere] plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes."].) Vo's plea established Dennis's right to restitution as a victim of the offense. (Pen. Code, § 1202.4, subds. (a)(1) & (f); *People v. Giordano* (2007) 42 Cal.4th 644, 652; *People v. Stanley* (2012) 54 Cal.4th 734, 736 [defendant's plea entitled victim to restitution for damage under section 1202.4].)

Having accepted the benefits of a plea deal, Vo cannot now challenge the restitution award by disputing the factual basis for the charges or attempting to relitigate her culpability. (*In re Troy Z.* (1992) 3 Cal.4th 1170, 1181 ["defendant 'cannot admit the sufficiency of the evidence by pleading guilty [or nolo contendere] and then question the evidence by an appeal' "]; *People v. Zuniga* (2014) 225 Cal.App.4th 1178, 1187 [by pleading guilty a defendant admits all matters essential to the conviction]; see *Wallace*, *supra*, 33 Cal.4th at p. 750 [defendant who enters into negotiated disposition cannot later assert insufficient evidence of guilt to support plea and ensuing conviction].)

5

Even if it were permissible to revisit culpability, we would reject Vo's attempt to deflect all responsibility onto co-defendant Spangler. Contrary to the contention that there is "no evidence" to support the trial court's finding that she caused Dennis's loss, the evidence in the record supports the trial court's conclusion that the loss arose directly from Vo's criminal conduct. Dennis testified Vo induced him to provide $23,250 in earnest money to purchase the property and to place $200,000 into an escrow account controlled by Spangler by promising him that she would eventually transfer title to him. Dennis also testified that Vo further induced him by offering to provide a loan if he did not qualify for financing on his own. Vo purchased the property with two high interest loans and then used Dennis's escrow funds—without his knowledge or approval—to refinance them. And despite her promises to transfer title and her assurances that she would provide financing, Vo ultimately sold the property without Dennis receiving any benefit from the sale or obtaining any reimbursement of his escrow funds.

The record also refutes Vo's contention that her conduct was not criminal because she received the escrow funds and used them as Dennis intended. Dennis testified that he deposited $200,000 into escrow to use as his future down payment on the property once he obtained financing; the deposit was not made to allow Vo to refinance her high-interest, short-term loans, of which Dennis had no prior knowledge. Indeed, if Dennis had intended for Vo to use his escrow deposit to refinance her loans, Spangler would not have needed to forge Dennis's signature and secretly divert the funds to Vo. Nor would Dennis have attempted to purchase a different home with the escrow funds if he had any awareness that Vo had already used the money.

Given Vo's direct responsibility for Dennis's loss, the trial court did not abuse its discretion by imposing joint and several liability with Spangler. " ' "Where two or more persons act in concert, it is well settled both in criminal and in civil cases that each will be liable for the entire result." ' " (*People v. Campbell* (1994) 21 Cal.App.4th 825, 834.) "Joint and several liability … increases the likelihood that the victim will be fully

6

compensated," which "is an important component of the restitution scheme." (*People v. Zito* (1992) 8 Cal.App.4th 736, 744.)

Because Vo's conduct directly caused Dennis's loss, her reliance on *In re Maxwell C.* (1984) 159 Cal.App.3d 263, and *People v. Scroggins* (1987) 191 Cal.App.3d 502, is misplaced. Both cases involved convictions for receiving stolen property and in that context addressed the limits of restitution for losses associated with the underlying thefts. In *Maxwell C.*, the minor's offense was receiving a stolen car stereo. The reviewing court held that he could not be required to pay restitution for damage to the vehicle caused in stealing the stereo unless he had also been involved in the stealing. (*Maxwell C.*, at pp. 265–267.) The *Maxwell C.* court found the juvenile court had no discretion to order restitution for losses due to criminal conduct that was neither charged and found true nor admitted. (*Ibid.*) Similarly in *Scroggins*, the defendant was charged only with receiving stolen property, but he was ordered to pay restitution to burglary victims whose losses were not connected to his crime. (*Scroggins*, at p.506.) In contrast here, Vo pleaded no contest to identify theft, and as we have discussed, there is sufficient evidence in the record establishing a direct relationship between her conduct and Dennis's loss.

## B. SUFFICIENT EVIDENCE SUPPORTS THE RESTITUTION CALCULATION

Vo argues the trial court abused its discretion by undervaluing the rental value of the home by $16,000, by overstating the amount of earnest money Dennis paid by $250, and by ordering her to pay $92 for the television antenna, which she argues Dennis could have removed and taken with him when he moved out of the home. The Attorney General concedes that Dennis paid $23,250 earnest money, not the $23,500 referenced in the court's order. But we see no abuse of discretion in fixing the rental value of the home at $2,500 per month rather than $3,500 as urged by Vo. Nor was it an abuse of discretion to find Dennis was entitled to restitution for the television antenna because it could not be removed from the property when he moved out.

Section 1202.4 does not require any particular kind of proof to establish a victim's loss. (*People v. Lehman* (2016) 247 Cal.App.4th 795, 803.) Dennis's testimony regarding the television antenna and the property's fair rental value—as well as Vo's own evidence showing the requested rents for similar homes in San Jose—provided a rational and factual basis for the trial court's determination. (See *People v. Prosser* (2007) 157 Cal.App.4th 682, 690–691 [crime victim's statements about value of stolen property constitute prima facie evidence of value for restitution purposes]; *Lehman*, at pp. 801–805 [upholding restitution award based on victim's trial testimony, sentencing statement and probation report]; *In re S.O.* (2018) 24 Cal.App.5th 1094, 1102–1103 [affirming restitution order where juvenile court credited victim testimony as to car repair costs and value of items removed from car]; *People v. Panah* (2005) 35 Cal.4th 395, 489 [uncorroborated testimony, if credible, may support restitution unless the testimony is inherently improbable or inherently incredible]; *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1544 [corroboration of victim restitution testimony generally not required for the acceptance of such evidence].)

Vo emphasizes that she researched and produced evidence to support a higher monthly rental value of $3,500. We have reviewed the record and see no error in the trial court's finding that the same evidence supported Dennis's estimate of the property's rental value. To the extent Vo is arguing her evidence of rental value either refuted or was more persuasive than Dennis's testimony, in effect she is asking us to reweigh the evidence. That is not our role in reviewing an order requiring victim restitution. (See *People v. Millard* (2009) 175 Cal.App.4th 7, 26; *People v. Thomas* (2017) 15 Cal.App.5th 1063, 1071.) "In reviewing the sufficiency of the evidence, the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' " (*People v. Baker* (2005) 126 Cal.App.4th 463, 468–469.) "If the circumstances reasonably justify the [trial court's] findings,' 'the judgment may not be

8

overturned when the circumstances might also reasonably support a contrary finding. We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact.' " (*Id* at p. 469.) We conclude that both Dennis's testimony and Vo's own evidence regarding the rental value of comparable properties provide substantial evidence to support the trial court's finding on that point.

### III.    DISPOSITION

The restitution award is modified to reduce by $250 restitution for the amount of "earnest money" paid by the victim, resulting in a total award of $183,892 to Dennis A. As so modified, the judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

H050473
*People v. Vo*